MR. JUSTICE HUNT,
dissenting:
I dissent. The District Court’s summary judgment in favor of North Fork should be affirmed.
The majority concludes that an oil well drilled in the Coal Creek State Forest, located on the North Fork of the Flathead River, will not generate such a “significant impact upon the human environment” as to require the preparation of an Environmental Impact Statement (EIS). The lease in question, however, not only gives Cenex the right to drill for oil and gas, it also empowers the corporation to engage in other activities associated with oil and gas development — laying pipelines, building tanks, constructing power stations and other necessary structures. Should this one exploratory well produce oil or gas, Cenex will definitely undertake these activities — activities that will significantly affect the human environment.
Taking comfort in the lease’s seemingly restrictive provisions that require Cenex to submit annually an operating plan for written approval by the Department before Cenex undertakes any additional developmental activity, the majority incorrectly concludes that the only issue involved in this case is the impact of this one well. Much more than one, site-specific well is at stake here. This well is merely the first step toward the full development of oil and gas in the Coal Creek State Forest. Should Cenex discover gas or oil with this one well, as is highly probable, the economic pressure for full-field oil and gas development of the area will be tremendous. For the majority to believe that such development is not at issue is incomprehensible.
*469 The majority states that an EIS will not be required until Cenex has made an “irretrievable commitment of resources.” An irretrievable commitment of resources occurs at the “go/no go” point of oil and gas development. With the Department’s approval of Cenex’s proposal to drill one exploratory well, we have reached this “go/no go” point. The drilling of one oil well on Coal Creek land constitutes a disturbance of the ground and, definitionally, an irretrievable commitment of resources. An EIS must be undertaken before the Department approves an annual operating plan that includes a proposal to drill — whether the proposal is for one well or twenty.
The immediate and long-term eifects that drilling in the Coal Creek State Forest will have on the human and physical environment are potentially devastating. Yet, by choosing to review the need for an EIS under the most lenient of all standards of review — the arbitrary, capricious and unlawful standard — the majority appears content to let the future of our forests, rivers, wildlife and wilderness rest in the hands of non-elected public officials. When I see the Department giving priority to the raising of revenue over the quality of our environment, I cannot share the majority’s assurance that the Department is adequately carrying out its fiduciary duty to “secure the largest measure of legitimate and reasonable advantage to the state” in managing school trust lands.
The core of Montana’s value derives from its natural beauty. The area involved, teeming with wildlife, includes the gateway to Glacier National Park, the Coal Creek State Forest and the North Fork of the Flathead River, which not only comprises part of the Wild and Scenic River System but also feeds the majestic Flathead Lake. The majority and the Department may be willing to exploit these state treasures without taking a hard look at the future. I, for one, cannot condone the Department’s hasty and ill-considered decision to allow drilling prior to the compilation of an EIS.
I would affirm the District Court.